IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DAWN HERRMANN,<br><br>      Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br><br>      Defendant. | Case No. 2:08-CV-608-TS<br><br><br><br>**REPORT AND RECOMMENDATION** |

Before the court is an action filed by Plaintiff, Dawn Herrmann, asking the court to reverse the final agency decision denying her applications for Disability Insurance Benefits (hereafter "DIB") and Supplemental Security Income (hereafter "SSI") under Titles II and XVI of the Social Security Act. *See* 42 U.S.C. §§ 401-403, 1381-83c. The Administrative Law Judge (hereafter "ALJ") found that Plaintiff was not disabled because she is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Plaintiff now challenges the ALJ's decision by arguing that it is legally erroneous and not supported by substantial evidence.

Having carefully considered the parties' memoranda and the complete record in this matter, the court recommends that the case be reversed and remanded.

## BACKGROUND

Plaintiff filed for DIB and SSI on February 24, 2005, alleging an inability to work since January 30, 2004. (Docket Entry #9, the certified copy of the transcript of the entire record of the administrative proceedings relating to Dawn Herrmann (hereafter "Tr. __") 80-83, 100, 427-29.)  After her applications were denied initially and upon reconsideration, a hearing was held before an ALJ on June 26, 2007.  (Tr. 40-59, 433-78.)  On February 28, 2008, the ALJ issued a decision denying Plaintiff's claim, finding Plaintiff could perform a reduced range of sedentary work.  (Tr. 20-33.)  On March 6, 2008, the Appeals Council denied Plaintiff's request for review (Tr. 5-7), and the ALJ's decision became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481.  As such, Plaintiff had exhausted her administrative remedies and the case was ripe for judicial review.  *See* 42 U.S.C. § 405(g).

On August 13, 2008, after receiving the Appeals Council's denial of her request for review, Plaintiff filed her complaint and the case was assigned to United States District Judge Ted Stewart.  (File Entry #3.)  Judge Stewart then referred the case to United States Magistrate Judge Samuel Alba pursuant to 28 U.S.C. § 636(b)(1)(B).

On December 22, 2008, Plaintiff filed her memorandum requesting that the Commissioner's decision be reversed or remanded.  (File Entry #11.)  Defendant filed his response memorandum on January 26, 2009.  (File Entry #15.)  On February 9, 2009, Plaintiff filed her reply memorandum.  (File Entry #16.)

**STANDARD OF REVIEW**

The court reviews the Commissioner's decision "to determine whether the factual findings are supported by substantial evidence and whether correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003); *accord Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  "'Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."'"  *Doyal*, 331 F.3d at 760 (citations omitted).  The court may "'neither reweigh the evidence nor substitute [its] judgment for that of the agency.'" *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (citation omitted).

The court's review also extends to determining whether the Commissioner applied the correct legal standards.  *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).  Besides the lack of substantial evidence, reversal may be appropriate where the Commissioner uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards.

*See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Secretary of Health and Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## ANALYSIS

Plaintiff challenges the ALJ's decision by arguing it is not supported by substantial evidence and it is legally erroneous. Plaintiff challenges several of the ALJ's findings; however, the court only addresses Plaintiff's challenge regarding the ALJ's finding that Dr. Cornelius' November 2005 opinion was "invalid." The court concludes that finding was based on an inaccurate understanding of the basis of that opinion, requiring the case to be reversed and remanded for the ALJ to reevaluate that opinion.

Plaintiff argues that the ALJ incorrectly found as fact that Dr. Cornelius based his Physical Capacities Evaluation (hereafter "PCE") on a diagnosis of fibromyalgia (Tr. 28-29, *see* Tr. 440), and that, based on this erroneous interpretation of Dr. Cornelius' opinion, the ALJ found Dr. Cornelius' opinions as to Plaintiff's functional abilities to be "invalid" (Tr. 29). Plaintiff argues that, to the contrary, Dr. Cornelius did not base his opinion of Plaintiff's functional limitations on a fibromyalgia diagnosis.

Generally, an ALJ must give more weight to the opinions of a claimant's treating sources than to the opinions of nontreating sources. *See* 20 C.F.R. § 404.1527(d)(2); *Watkins v. Barnhart*,

4

350 F.3d 1297, 1300 (10th Cir. 2003). The ALJ must first consider whether the medical opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If it is not, then the opinion is not given controlling weight. If it is so supported, then the ALJ must determine whether the opinion is consistent with other substantial evidence in the record. If the opinion is not inconsistent with such record evidence, then the opinion is given controlling weight. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); *Watkins*, 350 F.3d at 1300. If it is inconsistent, then the opinion is not given controlling weight. However, "'[w]hen a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around.'" *Hamlin*, 365 F.3d at 1215 (citations omitted).

The ALJ stated the following in assessing Dr. Cornelius' opinion:

> Dr. Peter L Cornelius treated Ms. Herrmann from at least her alleged onset date until February 2006. In April 2004, he estimated that Ms. Herrmann should refrain from lifting more than ten pounds. Five months later, he indicated that she should be able to perform "light duty" work with an option to change positions at will. As indicated above, both of these opinions are consistent with the rest of the medical evidence of record.
>
> In November 2005, Dr. Cornelius stated that Ms. Herrmann suffered from fibromyalgia *and was therefore* restricted to lifting no more than twenty pounds; never climbing, kneeling,

5

>or crawling; and occasionally balancing, stooping, crouching, or reaching.  He also opined that she must avoid all exposure to moving machinery, dust, fumes, and gasses.  However, as discussed above, Ms. Herrmann has never received a legitimate diagnosis of fibromyalgia and these estimates, which are based on a non-existent diagnosis, are rendered invalid.
>
>Therefore, the ALJ finds that while some of Dr. Cornelius' opinions are unreliable, others are consistent with the rest of the evidence.  Therefore, because he had a long-term treating relationship with Ms. Herrmann, the ALJ gives his opinions persuasive weight.

(Tr. 28-29 (emphasis added).)  Thus, the ALJ perceived that Dr. Cornelius' November 2005 PCE was based on Plaintiff's fibromyalgia, and because Plaintiff had never received a legitimate diagnosis of fibromyalgia, the entire November 2005 PCE was rendered invalid.

The court has examined Dr. Cornelius' November 2005 PCE.  As Plaintiff argues, Dr. Cornelius wrote "fibromyalgia" in the section of the assessment that inquired about whether Plaintiff suffers from fatigue.  Specifically, he wrote that diagnosis after the words "please describe" regarding Plaintiff's fatigue.  (Tr. 360.)  Thus, it is apparent to the court that Dr. Cornelius included the diagnosis of fibromyalgia as an explanation of Plaintiff's fatigue rather than as an explanation of the functional assessment generally.  As a result, the court must conclude that the ALJ, who found "invalid" the entire PCE because the ALJ believed it was based only on a diagnosis of

6

fibromyalgia, reached her conclusion as to Dr. Cornelius' assessment in error.

Defendant argues that the ALJ "considered "Dr. Cornelius' November 2005 opinion together with his September 2004 opinion and reasonably concluded that the latter was more consistent with the other evidence of record." (Docket Entry #15, at 16.)  As quoted above, however, this characterization of the ALJ's reasoning is not accurate.  The ALJ stated that Plaintiff suffered from fibromyalgia "*and was therefore* restricted" to the functional limitations listed by Dr. Cornelius, tying the diagnosis of fibromyalgia to all of the functional restrictions. (Tr. 28 (emphasis added).)  In addition, the ALJ concluded, "However, as discussed above, Ms. Herrmann has never received a legitimate diagnosis of fibromyalgia and these estimates, which are based on a non-existent diagnosis, are rendered invalid." (Tr. 29.)  Thus, the only reason the ALJ gave for rejecting Dr. Cornelius' PCE is that it was based on a non-existent diagnosis. As explained above, the ALJ's reasoning was based on an inaccurate understanding of what Dr. Cornelius wrote on the PCE.

Defendant argues that Dr. Cornelius' records reflect that he was unable to identify another diagnosis to account for Plaintiff's symptoms, citing to two places in the medical records where Dr. Cornelius described Plaintiff's symptoms as "strange and unusual" and where he commented that Plaintiff's diagnosis "was probably more likely fibromyalgia than anything really

anatomic or surgical with her back." (Tr. 275, 281.) Defendant concludes from these two entries that "Dr. Cornelius' records, like his Physical Capacities Evaluation, indicate that fibromyalgia was the only condition he could think of that might explain Plaintiff's symptoms." (Docket Entry #15, at 17.) The court disagrees.

Dr. Cornelius, who worked out of the West Bend Clinic, regularly treated Plaintiff for more than two years before he made his November 2005 PCE. It is reasonable that Dr. Cornelius would base his opinion on his overall experience with and knowledge of Plaintiff, her health issues, and her resultant functional limitations. The record reveals that Dr. Cornelius first treated Plaintiff on October 13, 2003, more than two years before his November 2005 PCE. (Tr. 227-228.) He examined her again on February 6, 2004, for complaints of back pain and diagnosed "Cervicalagia," which essentially means neck pain. (Tr. 227.) On February 19, 2004, he diagnosed "Backache NOS (not otherwise specified)." (Tr. 225.) On March 4, 2004, he diagnosed "sprain of neck" and noted Plaintiff was being referred for an MRI of her cervicolumbar spine later that same day. (Tr. 217-218.) Dr. O'Meara, who by the records of the West Bend Clinic appears to have been in Dr. Cornelius' same practice group, examined Plaintiff on March 31, 2004, and diagnosed "chronic strain to her upper back." (Tr. 211.) The next day, in his notes, Dr. Cornelius referred to Dr. O'Meara's March 31, 2004

examination and assessment, noting that Plaintiff had "some bulging disk, but no definite herniations." Dr. Cornelius' diagnosis was "backache NOS." (Tr. 209-210.)

On May 20, 2004, Ms. Herrmann was evaluated by Earl Bream, PA-C, practicing under pain specialist Bhupinder Saini, M.D. (who by the records also appears affiliated with the West Bend Clinic practice that Dr. Cornelius was associated with). Based upon that exam and an MRI showing "bulging disk C5-6" and "Thoracic MRI shows a slight bulge at 4-5, moderate bulge 5-6/6-7 and 8-9. At T6-7 and T8-9, . . . suggestive annular tear at both levels," the assessment was "Chronic worsening mid-back pain, neck pain[,]" assessed "Chronic worsening mid-back pain, neck pain." (Tr. 193.) That May 20, 2004 report was copied to Dr. Cornelius. (Tr. 194.) On July 22, 2005, Dr. Cornelius examined Plaintiff again, noted her earlier multiple evaluations and consults, and suspected her back pain was "mostly musculoskeletal." (Tr. 310.) On February 6, 2006, Ms. Herrmann underwent an MRI of her cervical and thoracic spine by Dr. Cornelius' referral. (Tr. 369.) That MRI confirmed multi-level degenerative disk disease (hereafter "DDD"), including bulging disks.[1] The court concludes

---

[1] Dr. Litzau interpreted the MRI as confirming straightening and subtle reversal of the usual cervical lordosis and posterior disc osteophyte formations from C3-4 through C6-7, plus mild joint hypertrophy at C5-6 and C6-7, including effacement of the ventral CSF space at C5-6. (Tr. 369.) In the thoracic spine MRI, there was mild posterior disc bulging at the T6-7, T8-9, T9-10, and T11-12 levels, including mild central spinal stenosis at the T8-9, T9-10, and T11-12 levels. (Tr. 370.)

that, contrary to Defendant's argument, the record does not reveal that fibromyalgia was the only diagnosis Dr. Cornelius could come up with to describe Plaintiff's symptoms; instead, the record reveals several diagnoses Dr. Cornelius had made, and consistent treatment over the period leading to his November 2005 PCE, and a confirmation, after that evaluation, that Plaintiff suffered from DDD.

As explained above, an ALJ must consider a series of specific factors in determining what weight to give any medical opinion.  *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).  The factors outlined in 20 C.F.R. § 404.1527(d)(2)-(6) include the length and nature of the treatment relationship, frequency of examinations, the degree to which the opinion is supported by relevant evidence, the opinion's consistency with the record as a whole, and whether the opinion is that of a specialist.  The opinion of a treating physician is entitled to controlling weight, "so long as it is not inconsistent with other substantial evidence in the record." *Hamlin*, 365 F.3d at 1215; SSR 96-2p.

The ALJ did not base her ruling finding Dr. Cornelius' opinions "invalid" on the finding of any other physician that Ms. Herrmann has significantly greater functional abilities than those detailed by Dr. Cornelius in his PCE.  "When a treating physician's opinion is inconsistent with other medical evidence,

10

the ALJ's task is to examine the other physician's reports to see if they outweigh the treating physician's report, not the other way around." *Hamlin*, 365 F.2d at 1215, *citing Goatcher*, 52 F.3d at 290.  Here, the ALJ did not base his decision to reject the November 2005 PCE on an evaluation of the evidence, such as by examining Plaintiff's other physicians' opinions to see if they outweighed Dr. Cornelius' PCE.  Instead, the ALJ's reasoning for rejecting the November 2005 PCE is based solely on the inaccurate understanding that the PCE was completely based on a diagnosis of fibromyalgia.  As such, the ALJ did not give a legitimate reason for rejecting Dr. Cornelius' November 2005 PCE.

Defendant gives other reasons to justify the ALJ's rejection of Dr. Cornelius' November 2005 PCE, such as that it was inconsistent with his September 2004 assessment and the opinions and findings of Dr. Callear, Dr. Korshidi, Dr. Chan, Dr. Horne, Mr. Beam, and Mr. Ferris.  The court does not examine whether this assertion is accurate because it is not this court's role to weigh the evidence.  The court may not rely on "analytical revisions offered on judicial review" in order to uphold the ALJ's denial of benefits.  *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004).  The Tenth Circuit has rejected such post hoc efforts to salvage defective ALJ reasoning. *See id.*  The Tenth Circuit has explained that such post hoc efforts to salvage ALJ decisions "would require [the court] to overstep [its] institutional role and usurp essential functions committed in the

first instance to the administrative process." *Id.*  Thus, when an ALJ's decision cannot stand on its own erroneous rationale, the court must reverse and remand the case for further proceedings before the agency.  *See id.*

Because Dr. Cornelius' PCE lists functional limitations that are stricter than those adopted by the ALJ, a reevaluation of Dr. Cornelius' November 2005 PCE may lead the ALJ to change her finding of Plaintiff's RFC, what jobs Plaintiff may be capable of performing, and, most importantly, whether Plaintiff is disabled as a matter of law.  Therefore, the court does not address Plaintiff's other arguments, but instead recommends that the case be remanded for the ALJ to properly consider Dr. Cornelius' opinion as based on his over two-year history of treating Plaintiff as his patient, rather than on the erroneously perceived diagnosis of fibromyalgia.

## CONCLUSION

Based on the above analysis, **IT IS RECOMMENDED** that the ALJ's decision be **REVERSED AND REMANDED.**

Copies of the foregoing report and recommendation are being mailed to the parties who are hereby notified of their right to object to the same.  The parties are further notified that they must file any objections to the report and recommendation, with the clerk of the district court, pursuant to 28 U.S.C. § 636(b),

within ten (10) days after receiving it.  Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

        DATED this 28th day of September, 2009.

        BY THE COURT:

_____
Samuel Alba
United States Magistrate Judge